Mark C. Nottingham v. Commissioner. Estate of Bertha V. Nottingham, Deceased, Mark C. Nottingham, Administrator v. Commissioner.
Nottingham v. Commissioner
Docket Nos. 31415, 31414.
United States Tax Court
1953 Tax Ct. Memo LEXIS 260; 12 T.C.M. (CCH) 503; T.C.M. (RIA) 53162; May 8, 1953
George M. Bryant, Esq., for the petitioners. William P. Flynn, Jr., Esq., for the respondent. MURDOCK Memorandum Findings of Fact and *261 Opinion The Commissioner determined an income tax deficiency of $9,825.63 for 1945 against each taxpayer. The issues for decision are (1) whether the amounts spent on various items of equipment were ordinary business expenses or capital expenditures, (2) whether interest was paid on an indebtedness, and (3) whether the loss on the Club Village project was an ordinary loss or a capital loss. Findings of Fact Mark C. Nottingham and Bertha, his wife, filed separate tax returns for 1945 on a community property basis with the collector of internal revenue for the Sixth District of California. Mark will hereafter be referred to as the petitioner. The petitioner has been engaged for about 20 years in designing, constructing and installing cesspools, septic tanks and sewage disposal units, in assisting land developers in obtaining zoning and sanitation permits for their subdivisions, and at various times during that period in renting heavy equipment, in subcontracting and joint venture contracting on Navy and Army installations, in the building of homes and developing of real estate, and in speculative building. He owned, in connection with his businesses, many pieces of equipment *262 including in 1945 a caterpillar tractor, two Chevrolet trucks, a trailer and a drill rig, none of which was new. The tractor, after being rented to another contractor, required complete cleaning, overhauling and replacing of many parts in order to restore it to the condition that it was in when rented. The petitioner made those repairs in 1945 at a cost of $1,088.03. The transmissions on the two Chevrolet trucks broke down and had to be replaced in 1945 at a cost of $621.67. The petitioner, in order to put brakes on and thereby be permitted to continue using a trailer, had to replace its axles in 1945 with two other used axles at a cost of $410. The petitioner repaired a drill rig in 1945 at a cost of $2,275. The above were all repairs which did not materially increase the value or life of the equipment but only kept it in usable condition. They were ordinary and necessary expenses of the petitioner's business paid or incurred in 1945. The petitioner installed service recorders on some of his trucks in October 1945 at a cost of $425.91. They recorded the time during which the trucks were running. The truck drivers disliked them and broke a number of them. The petitioner decided to *263 discontinue their use, removed them from the trucks and abandoned them prior to the close of 1945. The amount spent for them was a business loss of the corporation sustained during 1945 and not compensated for by insurance or otherwise. The petitioner deducted $4,820.61 on his return for 1945 as a business expense representing the above items and the Commissioner disallowed the deduction "as not constituting a proper deduction under the provisions of sections 23 (a) and 24 (a) (3) of the Internal Revenue Code." The petitioner, during 1945, was indebted to his mother-in-law in the amount of $6,400, $5,600 of which was evidenced by a note. The record does not show the provisions of the note. The petitioner agreed to pay $50 a month interest for the loan of the money but the evidence does not show what amount, if any, he paid as interest on the indebtedness during 1945. He deducted $600 as interest on this indebtedness and the Commissioner, in determining the deficiency, disallowed that amount as not constituting a proper deduction under section 23 (b). Calvin O. Black offered in May 1944 to sell to the petitioner a housing development project in Salt Lake *264 City, referred to herein as the Club Village project, including all arrangements made to the date of the offer. Black, in the fictitious name of Club Village, Inc., had made various arrangements, preparatory to starting construction work on the housing development. Black and the petitioner entered into an agreement on May 29, 1944 under which the petitioner agreed to take over the entire project. He was to pay Black for his interest in the project and was also to pay creditors of Black who had worked on or made advances to him in connection with the project. Black transferred to the petitioner all of his interest in "the association known as Club Village, Inc." The agreement provided, inter alia, that the petitioner was to organize a corporation but no corporation was ever organized. He was to pay Black and his creditors stated sums of money or stock in the corporation of equal par value which he was later to buy back. Purchase of the real estate had not been completed but the right to purchase it was transferred to the petitioner under the agreement. The petitioner started to carry out the agreement and to complete arrangements to start building the project. There were certain time *265 limits involved but those were extended from time to time. The FHA, a few days before work on the project was scheduled to start, issued a stop order on the grounds that workers and materials were needed for other jobs and could not be used on this one. Construction was postponed and the petitioner ran into financing difficulties but arrangements were made to continue the agreement. The petitioner was busy on the various arrangements and negotiations and was still trying in April 1945 to complete and carry out the agreement. Black and others refused to extend the agreement any further and, with the consent of the petitioner, negotiations were entered into with a new party whereby in May 1945 he purchased and took over the project. The petitioner received out of that transaction $4,791.50. He expended on the project a total of $31,556.02 and deducted the difference of $26,764.52 as a loss on his return for 1945 in accordance with the completed project method which he regularly used in reporting his income or loss from similar business activities, the profit from one of which was reported on his 1945 return. The Commissioner, in determining the deficiency, disallowed the loss and *266 explained that it was a capital loss from the sale of an interest in the project, only 50 per cent of which could be taken into account under section 117 (b) and only $1,000 of which could be allowed as a deduction under section 117 (d). Opinion MURDOCK, Judge: The first issue relates to the deductibility of expenditures to restore equipment to working condition. The amount spent has been proven and is not in dispute. The argument made by the Commissioner is that the expenditures should be capitalized rather than allowed as ordinary and necessary expenses. The service recorders were a loss and clearly a deduction is proper. The repairs were extensive and in two cases the new material had some advantages over that which it replaced. Nevertheless, the evidence shows that the equipment received rough use and the expenditures should be classified as ordinary and necessary expenses of the business. The petitioner failed to testify as to any payment of interest to his mother-in-law during 1945. Perhaps that was inadvertence but the Court must take the record as it is. Another witness testified in a general way that he had checked the various amounts involved in the different issues *267 but his testimony can not be taken as evidence of the payment of $600 as interest to the mother-in-law in 1945, since it does not appear that he knew whether or not such interest had been paid. There is no alternative but to disallow this deduction. A more lenient view of the evidence might be taken if this were an ordinary business loan. The evidence shows, however, that it was not strictly an arm's length transaction throughout. The evidence also fails to show whether or not the note specified any rate of interest. $50 a month on a total debt of $6,400 is an unusually high rate of interest. Reversal of the Commissioner's determination on this issue under such circumstances requires more and better factual support than this record contains. The final issue is whether the loss of the petitioner on the Club Village project is deductible as an ordinary business loss or is a capital loss. The Commissioner contends that the petitioner acquired an interest in an association or a partnership, which interest was a capital asset and a capital loss was sustained in 1945. It is shown by a preponderance of the evidence that the petitioner had no associates of any kind in this venture. Black *268 and his creditors would have stepped out and the petitioner would have taken over completely if the contract which he entered into had been carried out. Black and his creditors were to receive fixed amounts and the risk and profit, if any, were the petitioner's. It was his intention throughout to acquire full rights in this project for himself and to carry it out alone. He did not acquire any capital asset from the disposition of which a loss resulted. It was a loss resulting from the operation of his business. The Commissioner makes an alternative contention that the petitioner sustained a short-term capital loss within the meaning of section 117 (g) (2) by acquiring and then forfeiting an option to purchase real estate. The evidence indicates that Black had exercised the option and had started to buy the land prior to his contract with the petitioner. The possible acquisition of the real estate was only one of the steps which the petitioner would have taken had he carried out his plan successfully. That was not a separate transaction but was an inseparable part of the project plan. It is not a separate taxable transaction in the case of this petitioner who was regularly engaged *269 in the business of carrying out similar projects. The Commissioner also contends in the alternative that some of the total expenditures on which the petitioner bases his loss were deductible as ordinary and necessary expenses in 1944. If the petitioner had any burden to refute such a contention he has succeeded. The evidence shows that all of the expenditures were usual in connection with such a project and, since the petitioner reported his business activities of this kind upon a completed project basis, he was entitled to deduct the net amount of his loss in 1945 when he lost his rights to carry the project further. An issue raised by the petitioner as an alternative to the third issue need not be considered since the third issue has been decided in the petitioner's favor. He discusses several other matters in his brief but the pleadings do not cover those matters, they are not in issue and the Court expresses no opinion concerning them. Decisions will be entered under Rule 50.